UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BILLIE KEEN, Individually and as Personal Representative of the ESTATE OF LORI KATHLEEN KEEN, Deceased, <br>    Plaintiff, <br> <br>     vs. <br> <br> NESTLE WATERS NORTH AMERICA, INC., <br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) | 1:10-cv-1075-LJM-TAB |

## ORDER

This matter comes before the Court on Defendant's, Nestle Waters North America, Inc. ("Defendant"), Motion for Summary Judgment [dkt. no. 34], and Plaintiff's, Billie Keen, Individually and as Personal Representative of the Estate of Lori Kathleen Keen ("Plaintiff"), Cross-Motion for Partial Summary Judgment [dkt. no. 45]. Additionally, the Court will rule on Defendant's *Daubert* motion with respect to Plaintiff's expert witness, Barry Rope [dkt. no. 50]. For the following reasons, the Court **GRANTS in PART and DENIES in PART** Defendant's Motion to Strike Designation of Evidence Opposing Defendant's Motion for Summary Judgment Relating to Barry Rope and to Exclude the Testimony of Plaintiff's Purported Expert Witness, Barry Rope [dkt. no. 50]; **DENIES** Defendant's Motion for Summary Judgment [dkt. no. 34]; and **GRANTS** Plaintiff's Motion for Partial Summary Judgment [dkt. no. 45].

## I. BACKGROUND

On March 15, 2010, Plaintiff's decedent, Lori Keen ("Keen"), was working in the receiving dock area of a Kroger store in Franklin, Indiana ("Kroger"). Compl. ¶¶ 3,5. Keen was using a Crown SH-5520-40 Heavy-Duty Walkie Straddle Stacker (the "Crown Stacker") to move pallets of Ice Mountain bottled water and stack them. Def.'s Ex. 1 at 2. Each packaged pallet weighed approximately 2,050 pounds. *Id.* at 3. The combined weight of two pallets, exclusive of their wood frames, was approximately 4,100 pounds. *Id.* According to a report issued by the Indiana Department of Labor ("INDOL") after an investigation of the incident, the maximum load capacity of the Crown Stacker was only 4,000 pounds. *Id.* at 2.

About twenty minutes prior to the incident, Keen began double-stacking two pallets. Def.'s Ex. 2-A at 12:40. The first pallet was resting in a corner of the dock area, and Keen raised the second pallet with the Crown Stacker in an attempt to put it on top of the first pallet. *Id.* at 13:20. After that did not work, Keen used another forklift to move the first pallet to the second pallet, which was still suspended by the Crown Stacker. *Id.* at 14:30. Then, Keen lowered the second pallet on top of the first pallet. *Id.* She took the stacked pallets and moved them using the Crown Stacker toward the corner of the dock area. *Id.* at 15:50. At some point, the top pallet began to lean forward. Id. at 16:20.

As Keen was stacking and moving the pallets, Charles Guhl ("Guhl")—a Pepsi-Cola General Bottlers of Indiana, Inc. employee—entered the room and cautioned Keen about the way that she stacked the pallets. Guhl Dep. at 8, 37-38. Guhl noticed that the pallets were leaning. *Id.* at 67-68, 69. Concerned that the pallets created a safety hazard, Guhl advised Keen that she needed to remove the top pallet from the bottom pallet, and further,

2

if she could not remove the top pallet with a forklift, she needed to get someone to help her break down the pallet.  *Id.* at 38, 46-48.

After Guhl left the dock area, Keen continued to push the Crown Stacker across the room.  *See* Def.'s Ex. 2-A at 35:27.  Next, Keen bumped the double stacked pallets with the Crown Stacker, pushing the pallets into a deeper lean.  *Id.* at 35:55.  Stopping the Crown Stacker, Keen walked over to the pallets on the side toward which they were leaning.  *Id.* at 35:55.  On the surveillance video, it appears as though Keen held up her arms and placed her hands on the leaning pallets.  *Id.* at 37:35.  Both pallets fell to the ground, and Keen was trapped underneath.  *Id.* On March 20, 2010, Keen died as a result of the injuries she sustained from the collapsed pallets.  Compl. ¶ 16.

After investigating the incident, INDOL cited Kroger for violating several Occupational Safety and Health Administration (OSHA) regulations.  Pl.'s Ex. 1 at 6-8. Specifically, INDOL found that Kroger violated 29 C.F.R. § 1910.178(1)(3)(ii)(C) because INDOL determined that "[p]owered industrial truck operators did not receive training in topics which are applicable to the safe operation of the truck in the employer's workplace such as load manipulation, stacking, and unstacking."  *Id.* at 6.  INDOL also found Kroger in violation of 29 C.F.R. § 1910.176(b) because "[m]aterial stored in tiers was not stacked, blocked, interlocked, or limited in height so that it was stable and secure against sliding and collapse."  *Id.* at 7.  Finally, INDOL cited Kroger for violating 29 C.F.R. § 1910.178(o)(2) because "[l]oads were being handled which exceeded the rated capacity of the industrial truck(s)."  *Id.* at 7-8.

It is undisputed that Defendant packaged and shipped the pallets of bottled water involved in this incident.  Def.'s Ex. 2.  Nestle only provides labeling indicating the dangers

3

of stacking pallets to customers who request it. Fuhst Dep. at 84. Nestle did not provide any warnings with respect to the dangers associated with stacking the pallets of water involved in this incident. Def.'s Ex. 4. Nestle did not perform compression or transportation testing on twenty-four pack pallets of bottles, like those involved in the incident. Fuhst Dep. at 30, 33, 77.

The Court includes additional facts as necessary below.

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating

that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. **DISCUSSION**

As an initial matter, the Court must consider Defendant's motion to exclude and strike Plaintiff's designated evidence opposing Defendant's motion for Summary judgment relating to the testimony of Barry Rope [dkt. no. 50]. Defendant opposes the Court's consideration of Mr. Rope's testimony because it argues that his opinions do not meet the standards set out by Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and its progeny. 509 U.S. 579, 591 (1993). Plaintiff argues that Mr. Rope's testimony is both reliable and relevant and, therefore, should be admitted and considered by the Court in its determination of the cross motions for summary judgment.

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles outlined in *Daubert*. *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending the application of *Daubert* factors to engineers and other non-scientific experts). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the Court's role to ensure that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. To do so, the Court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will "assist the trier of fact to understand the evidence to determine a fact at issue." Fed. R. Evid. 702. *Daubert* sets forth the following non-exhaustive factors for the Court to consider when assessing an expert's methodology: (1) whether the theory has been or is capable

of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community. 509 U.S. at 593-94. Essentially, the Court's role is of gatekeeper, and its Rule 702 inquiry is "a flexible one." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2004).

The parties appear to agree that Mr. Rope is qualified to testify as an expert in product packaging. In his expert report, Mr. Rope concludes that the incident could have been prevented if Nestle had followed seven procedures he suggests. Plaintiff asserts that these suggestions are not novel scientific ideas and that there is no question that Nestle could act in accordance with them. Therefore, Plaintiff argues, Mr. Rope's suggestions are both relevant and reliable and the Court should conclude that they are admissible and rely upon them in its consideration of the parties' cross motions for summary judgment. However, Mr. Rope admitted in his deposition testimony that his conclusion that his seven suggestions could have prevented the incident was based on "intuition" and was unsupported by any testing or objective measures. *See, e.g.*, Rope Dep. at 64-66; 171-73; 183-85. It is the admission of just this type of speculation that *Daubert* is meant to prevent. *See DaPaepe v. GMC*, 141 F.3d 715, 720 (7th Cir. 1998) (stating that experts need analytically sound bases for their opinions). Accordingly, the Court concludes that Mr. Rope's testimony as to whether Nestle could have prevented the incident by taking the steps outlined in his expert report is inadmissible under *Daubert* because it is neither scientifically reliable nor helpful to the finder of fact. Furthermore, because the Court may not consider inadmissible evidence at the summary judgment stage, the Court will not consider Plaintiff's designated portions of Mr. Rope's deposition and report in its analysis

of the parties' cross motions for summary judgment. *See Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009).[1]

The Court next turns its attention to the merits of the parties' cross motions for summary judgment. The parties agree that this case is governed by the Indiana common law of negligence and not the Indiana Products Liability Act. In order to prove negligence, Plaintiff must establish: (1) a duty owed to Plaintiff by Defendant; (2) a breach of the duty; and (3) an injury proximately caused by the breach of the duty. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). Defendant argues that it owed no duty to warn Plaintiff of any alleged dangers associated with stacking and transporting pallets of its twenty four packs of half liter Ice Mountain Water. Alternatively, Defendant argues that even if it did owe Plaintiff a duty to warn, its failure to do so was not the proximate cause of Keen's injuries. The Court first turns its attention to the question of whether Defendant owed Plaintiff a duty to warn Keen.

"Absent a duty, there can be no breach, and therefore, no recovery for the plaintiff in negligence." *Vaughn v. Daniels Co. (W. Va.), Inc.*, 841 N.E.2d 1133, 1143 (Ind. 2006). The question of whether a duty exists is generally one of law to be decided by the Court. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). A three part balancing

---

[1]Local Rule 56.1(f) specifies that "[c]ollateral motions in the summary judgment process, such as motions to strike, are disfavored." It further instructs that "[a]ny dispute regarding the admissibility or effect of evidence should be addressed in the briefs." L.R. 56.1(f). Accordingly, the Court **DENIES** Defendant's Motion to Strike Designation of Evidence Opposing Defendant's Motion for Summary Judgment Relating to Barry Rope and to Exclude the Testimony of Plaintiff's Purported Expert Witness, Barry Rope [dkt. no. 50] to the extent that it seeks to strike portions of Plaintiff's designation of evidence and **GRANTS** it to the extent that it seeks to exclude Mr. Rope's testimony under *Daubert* within the confines of the analysis set forth in this Order.

test, first enunciated in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), "can be a useful tool" in the Court's determination of whether a duty exists in a given case. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010). This test balances three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb*, 575 N.E.2d at 995. However, the Indiana Supreme Court cautions that "a precise formulation of the basis for finding duty has proven quite elusive." *Pfenning*, 947 N.E.2d at 398. Indeed, "[n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize and agree that it exists." *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind. 1998).

Plaintiff argues that Defendant owed Keen a duty to warn her of the dangers of stacking and transporting the pallets of water primarily because of Defendant's relationship to Keen. Specifically, Plaintiff rests its argument upon the logic enunciated by the Indiana Court of Appeals in *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562 (Ind. Ct. App. 1986). In that case, the plaintiff was an employee of Kroger who was injured while handling cases of Faygo in the course of his employment. *Id.* at 569-70. The Court concluded that the Indiana Products Liability Act did not apply to the plaintiff because he was neither a user nor a consumer as defined by the statute. *Id.* at 586-88. However, Theile's claims were not limited to the Indiana Products Liability Act. He also made a negligence claim against Faygo under Indiana common law. *Id.* at 573. The court noted in dicta that it "did not believe that Faygo could argue it owed no duty to [Thiele]." *Id.* at 574 n.4. Indeed, the court stated that "[t]he relationship between Faygo and [Thiele] was that of manufacturer of a product and a 'middle man' who handled the product as it flowed through the stream

9

of commerce toward the ultimate user or consumer." *Id.* The court ultimately stated that because Faygo knew that its cases of soda would be delivered to Kroger retail stores for display and sale and would have to be handled by Kroger employees, it was reasonably foreseeable to Faygo that if it did not use reasonable care to design safe packaging for its cases of soda, those who handled the packages would be subject to injury. *Id.* Therefore, due to Faygo's knowledge of its relationship with Thiele and the foreseeabilitly of harm arising out of that relationship, the court noted that Faygo had a duty to take care to avoid harming Thiele with negligently designed packaging. *Id.* Keen stands in a very similar relationship with Nestle as Thiele stood in with Faygo. The evidence indicates that Nestle was aware that its pallets of water were shipped to retail locations for display and sale. *See* Pl.'s Ex. No. 2. Accordingly, Nestle must have known that its products would be handled by Kroger's "middle men" employees before reaching the ultimate consumer. *Cf. Thiele*, 489 N.E.2d at 574 n.4. Therefore, the relationship prong of the *Webb* balancing test cuts in favor of the Court concluding that Nestle owed Keen a duty to warn her of the dangers of stacking and transporting pallets of Ice Mountain water.

Defendant's argument that it owed no duty to Keen centers on the second factor of the *Webb* balancing test. Defendant asserts that it was not reasonably foreseeable that while she was handling the subject pallets, Keen would have violated the OSHA regulations upon which she was trained, as well as Kroger's internal safety policies and procedures relating to transporting and handling the pallets and, therefore, it owed her no duty to warn. In making this very fact specific argument, Defendant asks the Court to take a broad interpretation of the foreseeability prong of the *Webb* balancing test. Indeed, it is important to recognize that there is a difference between the foreseeability component of the duty

10

analysis and the foreseeability component of proximate cause. *Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 271 (Ind. Ct. App. 2004). In a discussion attempting to distinguish the two forseeability analyses, the Indiana Court of Appeals concluded that in the context of proximate cause, foreseeability involves evaluating the particular circumstances of an incident in hindsight but the foreseeability analysis that accompanies the duty inquiry requires less. *Goldsberry v. Grubs*, 672 N.E2d 475, 478-79 (Ind. Ct. App. 1996). The precise contours of this difference have never been explicitly addressed by the Indiana Supreme Court. *Lane*, 817 N.E.2d at 271 n.4. However, the Indiana Supreme Court did shed some light on the distinction in *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265 (Ind. 2003). In that case, the Court reviewed the specific facts surrounding the case and declined to take a "narrow view" of *Webb*'s foreseeability of harm prong in determining that a duty existed. *Id.* at 269.

The Court is not convinced that the facts of this case lends it to the broad foreseeability duty analysis employed in *Estate of Heck*. In *Estate of Heck*, the Indiana Supreme Court concluded that the defendant gun owners were intimately familiar with the dangers they exposed the public to by leaving their gun unguarded from their grandson, "a mentally disturbed, habitual and violent offender [with] free access to the premises." *Estate of Heck*, 752 N.E.2d at 207 (Sullivan, J., dissenting). Here, Defendant has presented no evidence of familiarity with the training practices of Kroger, and it would be unreasonable to excuse them from a duty to provide safe packaging or provide adequate warnings for its cases of water based upon training which it merely assumes is occurring. Defendant's arguments with respect to Keen ignoring her purported training are more

11

aligned with the foreseeability concerns surrounding the proximate cause inquiry than those bound up with the duty analysis. *See Goldsberry*, 672 N.E.2d at 478-79.

Defendant was aware, however, that its design decisions impacted the safety of anyone in its supply chain who might handle pallets of its half liter water bottles. Fuhst Dep. at 12. Given then, the knowledge that Defendant did have regarding the circumstances surrounding its relationship with "middle men" like Keen, it was reasonably foreseeable that if Defendant did not use reasonable care to design and package its pallets of water and provide adequate warnings to those who handled them in the stream of commerce, the people handling the pallets may be subject to injury. *Cf. Thiele*, 489 N.E.2d at 574 n.4. Accordingly, the foreseeability factor in conjunction with the relationship factor, lean strongly toward the Court concluding that Defendant owed Keen a duty.

Finally, with respect to public policy, the Court concludes that the Indiana Court of Appeals' discussion in *Thiele* suggests that the state has a public policy interest in preventing manufacturers from putting products dangerous to those responsible for the handling of those products into the stream of commerce. *See Thiele*, 489 N.E.2d at 574 n.4. Considering each of the *Webb* factors, the Court concludes that Defendant did owe Keen a duty to use reasonable care to provide a safe package, including adequate warnings for its cases of water. Accordingly, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment on the issue of whether Defendant owed Keen a duty.

Defendant asserts that even if it did owe Keen a duty, it cannot be liable for negligence as a matter of law because its purported negligence did not proximately cause Plaintiff's injuries as a matter of law. "A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably

12

foreseen and anticipated in light of the circumstances." *Munsell v. Hambright*, 776 N.E.2d 1272, 1279 (Ind. Ct. App. 2002). Proximate cause, an essential element of a negligence claim, is typically a fact determination for a jury. *Id.* However, where only one conclusion can be drawn from the facts, proximate cause becomes a question of law. *Id.*

In support of its argument that the facts show Keen would have ignored any warnings Nestle might have provided her about the dangers associated with stacking and transporting the pallets of water, Defendant asserts that Keen ignored her training on OSHA standards, Kroger's internal policies regarding the safe handling and transporting of pallets, and a direct warning from a bystander. Defendant argues that with respect to proximate cause, this case is indistinguishable from *Thiele v. Norfolk & West Railway*. 873 F. Supp. 1240 (N.D. Ind. 1994) (Lee, J.). In *Thiele*, a young man was struck by a passing train when his car was on the tracks. The undisputed evidence showed that the plaintiff disregarded a stop sign and the train's warning whistle, stopping his car on the tracks just before the train passed. *Id.* at 1250. The court concluded that based on the undisputed evidence, a reasonable jury could not conclude that plaintiff was less than fifty percent at fault for the accident. *Id.* at 1244.

The facts in this case, however, are not so "one-sided that one party must prevail as a matter of law." *Id.* The INDOL findings create a question of fact as to the adequacy of Keen's training and Kroger's adherence to its internal policies. The designated evidence indicates that prior to the incident Keen had completed Powered Industrial Truck Training, which included Kroger's directions as to the appropriate use of power trucks and stacking pallets. Reed Dep. at 21-24, 27. Specifically, Kroger trained Keen not to stack items in the dock area beyond Kroger's corporate height guidelines, not to move double stacked pallets,

13

and that she should never try to hold together any pallet that looks unstable. *See* Seay Dep at 23-24, 34; Reed Dep. at 46-47, 126. However, after investigating the incident, INDOL found Kroger in violation of several OSHA regulations, because it appeared that "powered industrial truck operators did not receive training in topics which are applicable to the safe operation of the truck in the employer's workplace such as load manipulation, stacking, and unstacking." Def.'s Ex. 1. Further, INDOL found that "material stored in tiers was not stacked, blocked, interlocked, or limited in height so that it was stable and secure against sliding and collapse." *Id.* Finally, INDOL found that "loads were being handled which exceeded the rated capacity of the industrial trucks." *Id.* Considering the conflict between the deposition testimony regarding Keen's training and the INDOL report, the Court must conclude that there is a question of fact as to the adequacy of the training Keen received with respect to handling the subject pallets of water. The evidence that Keen ignored Mr. Guhl's warning does not, without more, necessarily lead to the conclusion that Keen would have ignored warnings if Defendant had provided them. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS in PART and DENIES in PART** Defendant's Motion to Strike Designation of Evidence Opposing Defendant's Motion for Summary Judgment Relating to Barry Rope and to Exclude the Testimony of Plaintiff's Purported Expert Witness, Barry Rope [dkt. no. 50]; **DENIES** Defendant's Motion for Summary Judgment [dkt. no. 34]; and **GRANTS** Plaintiff's Motion for Partial Summary Judgment [dkt. no. 45].

IT IS SO ORDERED this 19th day of April, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Carl W. Butler
FROST BROWN TODD LLC
cbutler@fbtlaw.com

John P. Daly Jr.
GOLITKO & DALY, P.C.
john@golitkodaly.com

Lynnette Gray
JOHNSON GRAY& MACABEE
vhunter@embarqmail.com

Kevin C. Schiferl
FROST BROWN TODD LLC
kschiferl@fbtlaw.com